ANN E. McKNIGHT, BY HER NEXT FRIEND JACOB GIDEON,

*vs.*

JAMES M. McKNIGHT AND JAMES M. SMALL, JOHN F. DYER, ESAU AND JOHN F. PICKERELL, WILLIAM AND JAMES H. McVEIGLE.

IN EQUITY. DECIDED OCTOBER 26, 1853.

1. The control of a guardian of the real estate of his ward constitutes a sufficient entry to invest the ward with actual seizin; and on the marriage of the ward the authority of the guardian ceases, so far as the right of the ward is concerned.

2. A wife, unless she be entitled to a sole and separate estate, can bring no suit without the union of her husband in relation to her property or interests, either real or personal, legal or equitable.

J. M. CARLISLE, Esq., counsel for complainant.

SAM'L CHITTEN, Esq., counsel for defendants.

The complainant states that she is a daughter and one of the heirs at law of Anthony Preston, deceased, who died intestate, seized, of considerable real estate, leaving a widow and five other children besides the complainant.

That she married James M. McKnight while under the age of 21 years, and the ward of Jacob Gideon. That upon the treaty of said marriage it was especially agreed and stipulated between her intended husband and her guardian that the estate of the complainant should be settled upon her and her heirs, free from any control of her intended husband, and from all liabilities for his debts. That her husband has not entered in fact upon any portion of said estate, nor received the rents and profits, nor seized in her right of her undivided interest therein; nor hath she made entry therein. That certain creditors of her husband have levied a *fieri facias* upon a life interest in her estate, who are made defendants in this suit.

That without such ante-nuptial agreement the title of her husband as tenant by the courtesy, has not accrued, by reason of there having been no entry by her or him upon any part of the premises, but that the whole of said estate has remained awaiting partition and subject to dower. The pray of the claimant was, that a decree be passed for the purpose of carrying into effect the ante-nuptial agreement, and that her husband be decreed to have no estate or interest in the premises, and that the creditors be enjoined from further proceedings, &c.

The defendants answering, admitted the facts as stated in the bill That the husband of the complainant had issue by her born alive, and was entitled as tenant by the courtesy inchoate (his wife being still alive) to a life interest in one undivided fifth part, subject to the widow's dower in the whole. That if any ante-nuptial contract was made it never was reduced to writing, and is therefore null and void, so far as the defendants are concerned. That in point of law, the possession of the joint coparceners, and the reception of the rents and profits of the guardian, is equivalent to a reception thereof by the infant coparceners, and that the complainant, as one of the coparceners, has had an actual legal seizin of said estate. That the pendency of the partition proceedings can not effect their right to enforce their judgments.

Sam'l Chitten, counsel for the defendants, says the grounds alleged in the bill for equitable interposition on be-

half of the complainant are: First, An ante-nuptial agreement in contemplation and consideration of the intended marriage between the complainant and James M. McKnight, made between said James M. McKnight and said Jacob Gideon, the guardian of the complainant, to settle all the property of the complainant to her sole and separate use. Secondly, That the husband, James M. McKnight, has never had seizin of his wife's interest in the legal estate in question.

It is conceded that no settlement has ever been made. An agreement to settle is all that is relied upon for the complainant. Whether such agreement, if it ever had existence at all, was in writing or by parol, the allegations of the bill furnish no information; but as no written agreement is produced, and its non-production is wholly unaccounted for, we are warranted in assuming that if any agreement was in point made it was by parol. It is not proved that any agreement at all was written or parol was made. The only evidence touching this question is found in the deposition of Mrs. McKnight, the mother of the husband, and Mrs. Preston, the mother of the complainant. The affidavit of Mr. Gideon to the allegations of the bill is not evidence (certainly not upon a final hearing.) The testimony of the two mothers apart from all bias, is altogether too loose and indefinite to establish the fact of the existence of any agreement at all, and if deemed by the Court sufficient to establish the existence of an agreement, is yet so loose that it is impossible for the Court to give effect to it by decree.

But we insist that an ante-nuptial parol marriage agreement, even if a post-nuptial settlement, in pursuance of its terms, and reciting the fact of such agreement, be executed, and that too before the lien of the creditor attaches by judgment or execution, is yet void as to the creditor of the husband, whose debt has existence before the execution of the settlement. See 1st Story's Equity, 366 & 367; and Reade *vs.* Livingston, 3 Johnson, Ch. R., 480, and authorities cited. If we are right in this position, then the bill of the complainant must be dismissed. As a *femme covert* she can only be entertained when suing separate from her husband, to enforce or protect an existing separate right or interest. As

to the objection that the husband has never been seized, the control by the guardian of the estate, and receipt by him in his official character of rents, constituted a sufficient legal entry to invest the wards with actual seizin, if such seizin were necessary to confer upon the husband an interest liable for his debts (which however is denied). And upon the marriage, the authority of Gideon as guardian, so far as the complainant's rights and interests were concerned, ceased. And the same seizin and all were by operation of law transferred to and vested in the husband, and he could by no mere parol agreement, divest himself thereof. It is not very distinctly perceived, however, in what manner the question of the husband's seizin can effect the rights of the creditors, pending the lives of husband and wife. If the wife were dead, a question might arise as between the husband and the heirs as to his title as tenant by the courtesy which might possibly be affected by the character or fact of his seizin during the coverture, but whilst the wife is living, unless she be entitled to a sole and separate estate, she can without the union of her husband bring no suit in relation to her property rights or interests, either real or personal, legal or equitable. So that if her claim to a separate estate be without foundation, she cannot be entertained in a Court of equity upon either of the grounds alleged in the bill. If she have no right to a separate estate, her husband during the coverture is entitled to all her rights and interests, legal and equitable. If by reason of want of seizin on his part, or for any other reason, his interests in his wife's estate are not legally subject to execution or sale, or if irregularities in the management of the process of execution are likely to effect a sacrifice, if the wife have no sole and separate estate, the husband singly or in conjunction with his wife can alone interpose by suit, either at law or in equity, for redress or protection.

On October 26, 1853, the Court by its decree dismissed the bill with costs, and dissolved the injunction.